Jesus Eduardo Arias, Esq. LL.M.  [SBN  293983]
1150 S. Olive St. Sixth Floor
Los Angeles CA 90015
E| jearias@jesuseduardoarias.com
Tel| 323) 815 9450 Fax| 323) 375 1196
*Attorney for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EUSEBIO AYALA ROMAN, Individually and as Successor in Interest (Decedent's father) *and* LUCIA URIBE MARTINEZ, Individually and as Successor in Interest (Decedent's Mother),<br><br>Plaintiffs,<br><br>vs.<br><br>THE GEO GROUP, INC, WELLPATH, LLC and DOES 1-100, Inclusive,<br><br>Defendants, | **Case No.**<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. 5th Amendment (Due Process. Deliberate Indifference to Serious Medical Needs.)<br>2. 5th Amendment. (Unconstitutional Conditions of Confinement)<br>3. Negligence in hiring, training, and Supervising of employees-independent contractors, and failure to  Implement Adequate Policies,<br>4. Negligence by Wrongful Death<br>5. Intentional Infliction of Emotional Distress<br>6. Violation of California Government Code §7320<br>7. Violation of CA Civil Code § 52.1 *(The Tom Bane Civil Rights Act)*<br><br>**[ DEMAND FOR JURY TRIAL]** |

PLAINTIFFS' COMPLAINT  FOR DAMAGES

Page 1

# I.    INTRODUCTION

¨Plaintiffs¨ **EUSEBIO AYALA ROMAN**, Individually as the father and as Successor in Interest to Decedent **ISMAEL AYALA URIBE;** *And* **LUCIA URIBE MARTINEZ,** Individually as Decedent's mother, and as also as a Successor in Interest to the Decedent, collectively referred here as **" Plaintiffs**", bring their Complaint for wrongful Death and survival claim damages against the Defendants; **THE GEO GROUP, INC; WELLPATH, LLC,** and against **DOES 1 through 100** inclusive. Plaintiffs hereby respectfully allege as follows.

## II. JURISDICTION AND VENUE

1. This civil action is based upon violations to fundamental constitutional rights protected under 42 U.S.C. § 1983, 1985, 1986, & 1988, and for violations to the 4th, 5th, 8th, and 14th Amendments of the United States Constitution.

2. The Defendants are being sued not only for State Causes of action such as Negligence, but also under Section 1983 for constitutional violations, because 1983 Civil Rights Act, applies to individuals or private entities acting under color of law, who deprive others of federal constitutional or statutory rights. The Courts have generally held that private entities can be liable under Section 1983 if they perform functions traditionally and exclusively reserved to the state, such as operating Jail detention facilities. Defendant The Geo Group Inc. was acting under color of law engaged in functions traditionally and exclusively reserved to government authorities which have delegated all those duties to them. ICE-DHS.

3. Thus, Jurisdiction is based under 28 U.S.C. § 1331, 1343, (a) (1) – (2) & 1367.

PLAINTIFFS' COMPLAINT FOR DAMAGES

4. This US District Court has supplemental jurisdiction over the Plaintiff's State claims pursuant to 28 U.S.C. § 1367 (a). Those claims are intrinsically related to the federal claims, and therefore they are considered to be arising out of the same case and controversy under Article III of the US Constitution.

5. Venue in this District Court is proper under 28 U.S.C. § 1391(b), because the DEFENDANTS reside in this Judicial District. And because all the incidents giving rise to this matter occurred within the geographical area covered by this District. The incident core to this action occurred at Adelanto California. Which is located within the geographical area of this District.

6. The amounts in controversy exceed the minimum jurisdictional limits.

## I.      THE PARTIES

7. At all times relevant to this action, the Decedent **ISMAEL AYALA URIBE** (hereinafter referred to as "ISMAEL" "MR. AYALA URIBE" or "DECEDENT") was a resident of Huntington Beach California. He was 39 years old at the time of his Death. He died on September 22, 2025.

8. Plaintiff **EUSEBIO AYALA ROMAN** (hereinafter referred as "MR. AYALA or PLAINTIFF") is the father of the Decedent. Thus, Plaintiff brings this action pursuant California Code of Civil Procedure §377.60. A Declaration under CCP § 377.32 is attached here as **EXHIBIT No. 1** Plaintiff "Mr. Ayala" brings this action both in her individual capacity for Wrongful Death Damages and the loss of his son, and in his representative capacity as Decedent's successor in interest.  CCP § 377.34 (b)

9. Plaintiff **LUCIA URIBE MARTINEZ,** hereinafter referred to as "MS. URIBE" OR "PLAINTIFF") is the mother f the Decedent. Pursuant California

PLAINTIFFS' COMPLAINT  FOR DAMAGES

Civil Procedure Code §377.60, PLAINTIFF – MS. URIBE sues both in her individual capacity for Wrongful Death Damages as result of the Death of her son, and in her representative capacity as Decedent's successor in interest. A Declaration under CCP 377.32 is also here attached as **EXHIBIT No. 2** CCP § 377.34 (b)

10. The Plaintiffs act in their own individual capacity and as *successors in interest* to Decedent's Civil Rights per 42 U.S.C. § 1983. Further, the Plaintiffs seek wrongful death damages, and survival damages as to Mr. Ayala Uribe's pain and suffering prior to his death. And for any and all other applicable damages including those provided by Ca. Civ. Proc. § 377.34 (b). (*This Action is being filed after January 1st 2022)*

11. Defendant The Geo Group, Inc. (**"GEO GROUP")** is a private company in the business of   operating the ADELANTO PROCESSING CENTER in California. The Plaintiffs are  informed and believe that Defendant The Geo Group, Inc. was, and is, a for-profit corporation in full control of the operations of a Detention center that serves to keep detainees arrested by ICE – DHS (Department of Homeland Security).

12. At all relevant times, The Defendant GEO GROUP INC ("GEO GROUP") was and is a state actor within the jurisprudence under  federal civil rights law.

13. The Defendant Wellpath LLC. operating or formerly known as Correct Care Solutions, (CCS) sub-contracted with GEO GROUP INC to provide full service medical, mental health, and other care (collectively "healthcare") to the inmates housed at ADELANTO ICE PROCESSING CENTER. Plaintiffs is informed and believe that Defendant Wellpath, LLC was, and is, a for-profit corporation.

14. At all relevant times, **GEO GROUP** was responsible for assuring that the actions,  omissions,  policies,  procedures,  practices,  training,  supervision,

monitoring, and customs of their employees, was in compliance with the laws of the United States and with laws of California.

15. Plaintiffs reasonably believe and therefore here allege that at all relevant times; DOES 1-100 were individuals and or persons residents of California, employees specifically authorized by DEFENDANTS GEO GROUP and Wellpath LLC  to perform duties and responsibilities as personnel of ADELANTO ICE PROCESSING CENTER. All of their acts were performed within the course and scope of their employment. DOE DEFENDANTS 1-100 were acting with the complete authority and ratification of their principal, GEO  GROUP and or Wellpath LLC. The true names and capacities of those Defendants DOES 1-100, are unknown at this time to the PLAINTIFFS. Therefore, they are referred to in this complaint as DOE DEFENDANTS 1-100 Inclusive.  PLAINTIFFS will seek leave to amend their complaint to show the true names and capacity of those DEFENDANTS when they are ascertained. Each of the fictitiously named DEFENDANTS is responsible in some manner for the wrongful acts alleged herein that resulted in the Death of Mr. Ayala Uribe.

## II.    FACTS COMMON TO ALL CLAIMS FOR RELIEF

16. The Plaintiffs incorporate by reference here paragraphs 1 to 13 of this complaint, with the same legal effect as if they were fully alleged herein.

17. This claim arises from the unlawful and negligent conduct of a private contractor GEO Group, Inc., and its related personnel, and sub contractor[s] who failed to provide reasonable and adequate necessary care to Mr. Ismael Ayala Uribe,  while he was in custody at the Adelanto ICE Processing Center. Such series of multiple individuals' conduct constitute serious violations to

PLAINTIFFS' COMPLAINT  FOR DAMAGES

the US Constitution. Including to the Eighth Amendment to the United States Constitution, which prohibits deliberate indifference to serious medical needs, and contravenes the obligations of the United States under Articles 6, 7, 9, 10, and 14 of the International Covenant on Civil and Political Rights (ICCPR), as well as Articles 10 through 16 of the Convention against Torture (CAT). These US International commitments reaffirm and collectively prohibit in the United States  torture and other cruel, inhuman, or degrading treatment or punishment to any person detained, arrested, processed & otherwise restricted of  freedom.

18. These obligations are further clarified by authoritative international standards, including the United Nations Standard Minimum Rules for the Treatment of Prisoners (the Mandela Rules) and the UNHCR Detention Guidelines (2012), which emphasize that immigration detention is administrative in nature and must never replicate punitive or carceral conditions. Under these standards, all facilities -including those ran by private jail contractors- must ensure the adequacy of medical areas, equipment, and staffing; proper isolation and treatment of persons with infectious or vulnerable health conditions; and timely access to emergency medical transport and care. (see ICCPR, art. 6; Mandela Rules, Rules 24–35).

19. Mr. Ismael Ayala Uribe was detained by agents of the United States Immigration and Customs Enforcement ("ICE") on or about August 17, 2025, and at some point he was subsequently transferred to the Adelanto ICE Processing Center, located in Adelanto, California. From August 17 to September 21, 2025, Mr. Ayala remained under the full custody, control, care, and supervision of personnel employed and contracted by The GEO Group, Inc., operating the facility pursuant to a contractual agreement with Department Homeland Security

PLAINTIFFS' COMPLAINT  FOR DAMAGES

20. The Adelanto ICE Processing Center has been widely reported as one of the deadliest immigration detention facilities in the United States, with repeated findings of inadequate medical care, delayed emergency response, and systemic neglect documented by the Department of Homeland Security's Office of Inspector General (OIG) and by multiple human rights organizations.

21. Before being in custody of GEO GROUP Ismael Ayala, was in good standing of health. He was never in any sort of medical condition nor distress that required him to seek any medical attention. He had not committed any crime to be arrested wrongfully by ICE agents executing federal government policy orders violation of human rights, including 4th amendments. (Racial profiling- arrests without warrants. He was arrested with no warrant by immigration officers on August 17, 2025, in the city of Fountain Valley, California. He was taken into the **Adelanto ICE Processing Center** (Hereinafter referred also as the "Adelanto facility"), which is located in Adelanto, California.

22. There, he remained under the custody, care, and supervision of the personnel employed and contracted by **GEO GROUP.**

23. **GEO GROUP** undertakes full responsibility for all detainees that receives from ICE arrests, acting under color of law in exercise of functions that exclusively and traditionally within the power and duty of government entities. i.e ICE-DHS.

24. **GEO GROUP** Operates on a daily basis the facility pursuant their contractual agreements with ICE and DHS (Department of Homeland Security).

25. The Plaintiffs allege that, when DECEDENT was processed and taken into the Adelanto facility, the Defendants failed to properly have and maintain the facility in good standard conditions as required by law and procedures, and

PLAINTIFFS' COMPLAINT FOR DAMAGES

despite prior requests from DHS, including and not limited to the following; provide proper screening of new detainees, proper monitoring of health status, proper rendering of medical care, proper diagnose of medical condition, (s) proper medical examinations, and proper care in general to detainee's medical complaints. Their failure  to provide proper medical prompt attention to treat DECEDENT's condition(s) directly and proximately caused Decedent's demise.

26. In addition, Defendants denied DECEDENT prompt and adequate access to the any medical care necessary for him at the time of his arrest. The Defendants further kept Decedent subject to their wrongful custom and practices of keeping  deplorable conditions in this private detention center, as stated above. This  including not limited to;  lack of proper clean water, lack of proper healthy meals, lack of proper jail housing conditions, (extremely cold, dirty unsanitary) lack of proper supervision. Including the  deliberate indifference that Adelanto's personnel have routinely showed to all detainees under their custody and care.

27. Over the course of the time that Defendant was deprived of his freedom as jailed by GEO GROUP INC, he multiple times requested care for his serious pain, and suffering. He kept over and over asking for help, being deliberately ignored by The Defendants.

28. After other prior multiple request, on  September 18, 2025, Ismael Ayala continued to ask for help and submitted written request for medical assistance due to severe pain and high fever. He was evaluated by an on-call medical providers employed by The GEO Group. Following this cursory assessment, he was returned to his cell with only over counter pain pills  and without a reasonable assessment -  diagnostic evaluation or referral to evaluate the roots

PLAINTIFFS' COMPLAINT  FOR DAMAGES

and real health illness or condition origin of the symptoms. His symptoms had been worsening and he remained sick for weeks with deliberate indifference.

29. On September 21, 2025, Mr. Ayala's condition deteriorated rapidly, and on emergency levels by being non responsive. Then he was finally removed by Defendants from incarceration to a hospital. Upon arrival, he presented with hypertensive symptoms and tachycardia with  high-risk, life-threatening medical signs.  Despite medical intervention, Mr. Ayala was pronounced dead at approximately 2:32 a.m. on September 22, 2025. The cause of death at the time of this filing, appears to be related to a serious infection resulting in sepsis without proper treatment or care provided at any time during his detention.

30. The Negligent handling of this situation was the proximate legal cause of Mr. Ismael Ayala Uribe's Death. As result Mr. Ayala Uribe and Plaintiffs have suffered damages.  (Wrongful Death damages and Survival Claim Damages).

31. The Plaintiffs act in their own individual capacity and as *successors in interest* to Decedent's Civil Rights per 42 U.S.C. § 1983. Therefore, the Plaintiffs seek wrongful death damages, including survival damages as to Mr. Ayala Uribe's pain and suffering prior to his death. And for any and all other applicable damages including those provided by Ca. Civ. Proc. § 377.34 (b). (*This Action is being filed after January 1st 2022)*

32. For at least several weeks prior to his death, Mr. Ismael Ayala experienced intense and progressive physical pain, including abdominal pain, severe buttock pain, persistent fever, chills, extreme weakness, and continuous intestinal internal pain related to internal bleeding. His multiple requests for help to Defendants were ignored and therefore futile causing deterioration of his health.

PLAINTIFFS' COMPLAINT  FOR DAMAGES

33. During all the time  Ismael Ayala remained entirely dependent on Defendants for access to medical care, adequate pain medication, diagnostic evaluation, and timely treatment. Despite their notice and opportunity to act in furtherance of Ismael Ayala's health, the Defendants deliberate failed to act reasonably and prudently to avoid serious risk of harm and death.

34. The pain and suffering experienced by Mr. Ayala were conscious, very  severe and  foreseeable, and  were  directly  attributable  to  Defendants'  deliberate indifference  with  their   unconstitutional  conditions  of  confinement,  and callous disregard for the fundamental rights and the right to live of Decedent Ayala.

**FIRST CLAIM FOR RELIEF**

**(5th Amendment – Due Process – Deliberate Indifference to medical needs)**

**Against All Defendants (GEO Group, Inc., Wellpath, LLC, and DOES 1–100)**

35. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

36. At all relevant times, Mr. Ismael Ayala Uribe was an  immigration detainee, not a convicted criminal prisoner, and was therefore entitled to protections under the Due Process Clause of the Fifth Amendment to the United States Constitution.

37. Defendants  GEO  Group,  Inc.  and  Wellpath,  LLC,  although  private corporations, acted under color of federal law by operating and staffing the Adelanto  ICE  Processing  Center,  pursuant  to  contracts  with  the  federal government and performing functions that are traditionally and exclusively the prerogative of the government, including detention, custody, medical care,

PLAINTIFFS' COMPLAINT  FOR DAMAGES

and emergency response for any and all the immigration detainees being held at Adelanto.

38. Defendants owed Mr. Ayala a constitutional duty to provide adequate medical care, to respond reasonably and promptly to serious medical need, and to refrain from conduct that amounted to cruel punishment, deliberate indifference, with  objective unreasonableness and callous disregard for risk of serious harm-death.

39. Isamel Ayala (39) presented objectively serious and life-threatening medical conditions, including a prolonged fever, chills, rectal bleedings, severe gluteal pain, infection (s), electrolyte imbalance, renal dysfunction, and signs of systemic inflammatory response of his body. These symptoms, taken individually and collectively, constituted clear medical emergencies that should have been obvious to any reasonable person in Defendant's position, and required immediate attention. Including not limited to proper diagnostic evaluation, hospitalization for any required surgical interventions.

40. Despite the repeated complaints over a period of weeks, Defendants deliberately  failed to conduct basic diagnostic testing, failed to monitor vital signs, failed to escalate care, and instead provided palliative medication, thereby knowingly disregarding the  excessive risk of serious harm to Isamel Ayala's health & life.

41. Despite their established actual knowledge of Decedent's situation Defendants:

   a. Conducted only a cursory and inadequate medical evaluation, with improper unconstitutional customs and practices to minimize and disregard the seriousness  and the legitimate need of attention of detainees.

PLAINTIFFS' COMPLAINT  FOR DAMAGES

b. Failed to order diagnostic testing or timely refer Ismael Ayala to emergency – hospital as early as possible to avoid worsening of condition.

c. Returned Mr. Ayala to his cell with only minimal and inadequate pain medication to treat his serious ailments, sending him slowly to death path.

d. Delayed emergency intervention until his condition had become critical irreversible, life threatening and nearly a death in the progress was cruel.

42. When Mr. Ismael Ayala was finally transferred to an outside hospital, the imaging revealed diffuse intramuscular and retroperitoneal gas, peritonitis, possible abscess with infected hematoma, pneumoperitoneum, which are medical conditions that necessarily developed and worsened over the extended period of untreated infections and internal injury that were ignored by Defendant

43. Defendants' conduct was not a matter of medical judgment but rather a systemic failure to respond to obvious signs of serious illness, constituting deliberate indifference in violation of the Fifth Amendment. This is not the only case of death in custody at the hands of Defendant's wrongful conduct at Adelanto. Multiple other individuals have been suffering from the reckless disregard by these Defendants to the constitutional rights of the people detained by Immigration authorities in the United States.

44. As a direct result of Defendants' actions and omissions, Ismael Ayala endured significant conscious pain and suffering prior to his death, including untreated infections, escalating and excruciating pain, systemic inflammatory physical body responses, and physical deterioration in general, which would have been substantially alleviated and avoided with timely and constitutionally adequate

medical care if provided or at least procured in time by the involved Defendants.

45. The mechanisms and process of this cruel death was aggravated due to the evident knowledge and fear that Decedent perceived that he was dying, that he was being left to die slowly  and cruelly by these corporate Defendants "The Geo Group Inc.  and Wellpath LLC. Knowing that they had done surely the same to others letting them to die with deliberate indifference as a customary wrongful practice in this immigration facility. For no other reason other than profit interest due to the  billions of dollars they collect from US Government for detaining civil immigrants, ultimately in essence profiting US Citizens tax money by killing innocent civilians jailed in inhuman cruel conditions at Adelanto CA.

46. Each of the above actions and/or inactions affirmatively contributed to, was a substantial factor in, and proximately caused the Plaintiffs' harm. Including, the loss of love, loss of society, loss of comfort, attention, affection, solace, companionship, services, support of their son, in an unlimited set of general damages amount to be determined at trial.

47. Each of the above conduct by negligent actions and/or negligent omissions affirmatively contributed to, was a substantial factor in, and has proximately caused damages to the Decedent, by way of all the pre-Death pain and suffering that he experienced in an agonizing sadly and slowly manner.

48. Thus the  plaintiffs sue for their own loss of familiar relationship, love and affection of their son,  and also for Survival Claim Damages as the proper legal representatives acting on behalf of their son  for all pre death damages that he would be entitled under the law to recover had he survived from Defendant's conduct.

PLAINTIFFS' COMPLAINT  FOR DAMAGES

## SECOND CLAIM FOR RELIEF

### (Unconstitutional Conditions of Confinement – Fifth Amendment)

### Against All Defendants

49. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

50. The Fifth Amendment prohibits civil immigration detainees from being subjected to conditions of confinement that amount to punishment or that pose an unreasonable risk to health and safety.

51. At all relevant times, Defendants maintained and enforced policies, practices, and customs at the Adelanto ICE Processing Center that resulted in:

    a. Inadequate access to timely medical care;

    b. Delayed emergency responses;

    c. Insufficient staffing and supervision of medical personnel;

    d. A pattern of neglect toward detainees experiencing acute medical distress.

52. The dangerous conditions at the Adelanto ICE Processing Center were well known, including through public reports, federal oversight findings, and prior deaths at the facility.

53. Defendants maintained conditions of confinement in which detainees reporting prolonged fever, bleeding, and acute pain were routinely provided only over-the-counter medication, without meaningful medical evaluations, reflecting a custom or practice of delaying or denying emergency care without regard for the consequences.

54. Such conditions predictably resulted in advanced status of serious and risk full infections, organ failures, and ultimately death of Ismael Ayala at 39 years old.

55. Ismael Ayala's death was a foreseeable and preventable consequence of these unconstitutional conditions of confinement ,which have been routinely maintained by the Defendants at Adelanto facility for the last few years. These Unlawful custom & Practices proximately caused the death of Ismael Ayala and harm -damages to plaintiffs.

## THIRD CLAIM FOR RELIEF

**(Negligence in the hiring, training and supervising of employees and independent contractors).  ( California Law)**

**Against GEO Group, Inc. and Wellpath, LLC and Does 1-100**

56. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

57. GEO Group, Inc. and Wellpath, LLC were responsible for establishing hiring policies, procedures, training, supervision, and oversight to ensure constitutionally adequate operation of Adelanto detention center.

58. Defendants failed to develop, maintain and update proper and reasonable hiring policies in order to unsure suitability of the employees, guards, independent providers, agents etc, to perform their services safely and ensuring the well being of all detainees while being incarcerated at Adelanto detention center.

59. Defendants failed to properly train and supervise employees regarding:

    a. Recognition of medical emergencies;

    b. Response to symptoms such as hypertensive and cardiac symptoms;

    c. Escalation protocols for deterioration of  detainee's  health;

    d. Timely referral protocols  to outside emergency hospitals.

60. Defendants further maintained unlawful policies or customs that prioritized cost containment, understaffing, and financial gain over detainee's health and safety.

61. Defendants failed to train staff to recognize that persistent fever, rectal bleeding, electrolyte abnormalities, and escalating pain represented red-flag symptoms requiring immediate escalation of care, and instead fostered a systemic culture in which such symptoms were  minimized and blatantly ignored without regard for any consequences to the persons suffering from such symptoms or conditions

62. This conduct and obvious failures to act within standards of care, was a moving force behind the harm caused, (death) including and not limited evidenced by the delayed diagnosis of pneumoperitoneum and peritonitis, conditions that are highly survivable when treated promptly and properly.

63. These failures reflect deliberate indifference to the constitutional rights of detainees at Adelanto and were the moving force behind the violations suffered by Ismael Ayala and others currently being held at such essentially death row disgraced detention place being used  for Immigrants non criminals detainees.

64. As a direct and proximate result of these failures, Ismael Ayala was denied adequate medical care and died while in Defendants' custody.

65. Thus the  plaintiffs sue for their own individual damages and loss of  love and affection of their son,  and also for Survival Claim Damages as the proper legal representatives acting on behalf of their son  for all pre death damages that he would be entitled under the law to recover had he survived from Defendant's conduct.

PLAINTIFFS' COMPLAINT  FOR DAMAGES

## FOURTH CLAIM FOR RELIEF

### NEGLIGENCE - Wrongful Death under CA Law
### Against All Defendants

66. Plaintiff realleges and incorporates by reference all preceding paragraphs.

67. Ismael Ayala's death was wrongful, foreseeable, and preventable, and occurred while he was entirely dependent on Defendants for his safety and medical care.

68. Plaintiffs and Ismael Ayala's statutory beneficiaries suffered damages including loss of life, loss of companionship, emotional distress, and other compensable harms.

69. At all relevant times, the Defendants GEO, WELLPATH and DOES 1-100, as detention facility involved parties, owed a duty of care to the DECEDENT, to have and maintain reasonable conditions at their ADELANTO Facility in order to protect the well being of all persons being detained subject to immigration proceedings. Including the decedent. And including a duty to provide reasonable medical assessments, medical screenings, medical checks, medical care and attention to any and all conditions by any and all detainees while such persons were -are under their custody by orders of ICE – DHS.

70. The defendants breached their duties to Decedent.

71. At all relevant times, between August 17, 2025, and through September 22, 2025, Defendants willfully and/or negligently failed to provide DECEDENT with reasonable and proper care and medical attention which he urgently needed while he was under their custody and supervision.

72. The Plaintiffs are informed, believe and therefore allege that, at all relevant times, Defendants GEO, WELLPATH and DOES 1-100 breached their duties of care by:

a) Failing to properly screen Decedent's medical condition at time of arrival.

b) Failing to properly assess and diagnose Decedent's medical conditions.

c) Failing to perform proper medical examinations in response to Decedent's complaints.

d) Failing to provide any proper medical attention to Decedent.

e) Failing to properly examine Decedent's medical condition.

f) Failing to properly medicate the Decedent.

g) Failing to provide safe and adequate nutrition and safe and adequate hydration to the Decedent.

h) Failing to provide reasonable supervision and management of Decedent's health care needs while he remained in custody at Adelanto facility.

i) Failing to obtain Decedent's medical records and health history in order to determine any adequate health care plan for the Decedent.

j) Denying Decedent prompt and adequate access to medical care.

k) Failing to exercise that degree of care that a reasonable provider would exercise under similar circumstances, as a private jail prison contractor for ICE DHS.

73. Such of the above wrongful actions and omissions, among others, were made with deliberate indifference to serious risks of death to Ismael Ayala Uribe.

74. Hence, with their negligent actions and omissions, the Defendants breached their duties to act as reasonable persons and entities would do under similar circumstances. The irreversible result of their failure to exercise reasonable due care was the proximate legal cause of the Decedent's death and Plaintiffs' damages. The damages caused by the Defendants' negligence include but are not limited to Wrongful Death Damages, but also include Survival Pre-Death pain and suffering Damages. California Code of Civil Procedure *§ 377.34. (b)*

PLAINTIFFS' COMPLAINT FOR DAMAGES

75. Thus, the Defendants are liable to the Plaintiffs for the wrongful death of their son and for the survival damages caused to him during all the time[s] prior to his death.

76. The plaintiffs allege that at all relevant times, GEO GROUP & WELLPATH were the employers of Defendants DOES 1-100. Therefore, at all relevant times, they were acting within the scope of their employment. Thus, according to the generally known judicial doctrine of *Respondent Superior Liability*, GEO GROUP and Well Path LLC are  vicariously liable for the wrongful conduct of its employees because they have been committed within the course and scope of their employment.

77. Each of the above actions and/or inactions affirmatively contributed to, was a substantial factor in, and proximately caused the Plaintiffs' harm. Including, the loss of love, loss of society, loss of comfort, attention, affection, solace, companionship, services, support of their son, in an unlimited set of general damages amount to be determined at trial.

78. Each of the above conduct by negligent actions and/or negligent omissions affirmatively contributed to, was a substantial factor in, and has proximately caused damages to the Plaintiffs (wrongful death) and to the Decedent, by way of all the pre-Death pain and suffering that he experienced in an agonizing sadly manner. Thus, the Plaintiffs bring a Survival Claim for Damages as the proper legal representatives acting on behalf of DECEDENT, for all pre death damages that he would be entitled under the law to recover had he survived from Defendant's Negligence Conduct.

# FIFTH CLAIM FOR RELIEF
# INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
# UNDER CALIFORNIA LAW
## (Against Defendant GEO, WELLPATH and DOES 1-100)

79. Plaintiffs allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

80. Plaintiffs allege that Defendants' DOES 1-100 conduct was outrageous when they denied Decedent prompt and adequate medical attention despite evident need for it while he was under their custody, supervision, and care. Their failure to provide adequate care and supervision to him when his condition was progressively deteriorating was done intentionally and/or with reckless disregard of the probability that Decedent would suffer emotional distress, which he did suffer as result of the Defendants' conduct. He knew and felt his condition was worsening, the Defendants deliberately ignored his pleads for help and proper medical attention. Therefore intentionally inflicted emotional distress to Ismael Ayala.

81. The emotional distress he felt must have been unmeasurable. After all, the Defendants actions and omissions not only caused him emotional distress but eventually led to his agonizing and slow, deeply… felt sad death.

82. At all relevant times, GEO GROUP was the employer of Defendant DOES 100. Therefore, at all relevant times, they were acting within the scope of their employment. Thus, according to the generally known judicial doctrine of *Respondent Superior Liability*, GEO GROUP is vicariously liable for the wrongful conduct of its employees because they have been committed within the course and scope of their employment.

83. At all relevant times, WELLPATH was the employer of Defendant DOES 1 to 100. Therefore, at all relevant times, they were acting within the scope of

their employment. Thus, according to the generally known judicial doctrine of *Respondent Superior Liability*, WELLPATH LLC is vicariously liable for the wrongful conduct of its employees because they have been committed within the course and scope of their employment.

84. Therefore, because the outrageous conduct of the Defendants was a substantial factor in causing the Decedent severe emotional distress, the Plaintiffs bring claims for individual damages and for  Survival Claim for Damages as the proper legal representatives acting on behalf of DECEDENT, for all pre-death damages that he would be entitled under the law to recover had he survived.

## SIXTH CLAIM FOR RELIEF
### VIOLATION OF CALIFORNIA GOVERNMENT CODE §7320
### (Against Defendant "GEO and WELLPATH")

85. Plaintiffs allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

86. At all relevant times, Defendant GEO GROUP was a private detention facility operator of the Adelanto detention facility and WELLPATH LLC  was an agent or independent contractor of GEO GROUP.

87. As such, Defendants GEO GROUP and WELLPATH, as well as their agents, persons acting on behalf of them, and their employees had to comply with, and adhere to, the detention standards of care and confinement agreed upon in the facility's contract for operations, including ICE Performance Based National Detention Standards (PBNDS), and with California Law.  Ca. Gov. §7320

88. Plaintiffs allege that, at all relevant times, The Defendants GEO GROUP, WELLPATH and their DOE employees 1-100 violated the PBNDS among multiple other laws and regulations, and manuals, requirements, memorandums, and Ca. Gov Code 7320 et al., by failing to provide appropriate care and supervision to the detainees at Adelanto, specifically to Decedent.

89. With their negligent actions and omissions, Defendants breached the duty of care they owed to the Decedent as a person under their full custody and supervision.

90. Hence, because of Defendant's violation of the detention standards of care and confinement, the Decedent was wrongfully killed, and wrongful damages as well as survival claim damages are warranted by the law thus are hereby requested by the Plaintiffs.

## SEVENTH CLAIM FOR RELIEF
## VIOLATION OF TOM BANE CIVIL RIGHTS ACT
### (Against All Defendants)

91. The Plaintiffs repeat and re-allege all previous paragraphs as if fully set forth herein.

92. California Civil Code §52.1 *et al* (the Bane Act), prohibits any person from using violent acts or threatening to commit violent acts in retaliation against another person for exercising that person's constitutional rights.

93. California Civil Code §52.1 authorizes a private right of action for damages to any person whose constitutional rights are violated. Here, the Plaintiffs allege that Defendants blatantly denied providing medical attention to Ismael Ayala in deliberate interference for the exercise or enjoyment of his constitutional rights secured under the US Constitution, under the laws of the United States, Civil liberty rights, rights under the laws of the State of California, as well as fundamental rights and freedoms as conceived by our judicial system.

94. Plaintiffs allege that Ismael Ayala Uribe reasonably believed and understood that the inhumane acts committed by DEFENDANTS were intended specifically to preclude him by force from exercising his civil rights, to

PLAINTIFFS' COMPLAINT FOR DAMAGES

retaliate against him for invoking or de facto attempting to exercise such fundamental rights, and to prevent him from exercising civil rights as detainee.

95. The conduct of DEFENDANTS was a substantial factor in causing the harm alleged, the serious injuries, and ultimately the death of a young human being without due process and justice procedure. The above is the direct legal cause of the damages and the PLAINTIFFS pursue those under *The CA Bane Act.*

96. The PLAINTIFFS seek damages including survival damages under this claim in their individual capacity and as a successors-in-interest to DECEDENT.

97. The PLAINTIFFS also seek costs and attorney fees under this claim pursuant to Civ. Code, §52.1(h) and Ca. Civ. Code §1021.5.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs' request entry of judgment in their favor and against the Defendants as follows:

A. For compensatory General Damages under Federal Laws in an amount to be proven at trial .

B. For Attorney Fees pursuant 42 U.S.C. § 1988.

C. For compensatory Wrongful Death Damages under California Law. In amount [s] to be proven at Trial to be awarded to each of the Plaintiffs.

D. For Attorney's fees and costs pursuant to California Civil Code, Section 52.1(h).52 (The Bane Act). and California Civil Code §1021.5;

E. For Survival Action Damages, (Pre Death Pain and Suffering). All applicable survival damages applicable under CA Code of Civil Procedure § 377.34 (b). (Non-Economic survival damages according to proof at trial).

F.  For Punitive Damages as applicable under the law and supported with the discovery and evidence.

G.  For such other relief as the Court may deem just and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs hereby expressly demand a trial by Jury.

Respectfully Submitted by:

Date:   December 31, 2025                    */S/Jesus Eduardo Arias Esq., LL.M.*
                                                        Attorney for Plaintiffs

PLAINTIFFS' COMPLAINT  FOR DAMAGES